UNITED STATES of America, Appellee,

v.

Rigoberto MATOS,
Defendant–Appellant.

No. 1137, Docket 89–1566.

United States Court of Appeals,
Second Circuit.

Argued April 20, 1990.

Decided June 1, 1990.

Jonathan N. Halpern, Asst. U.S. Atty., S.D.N.Y. (Helen Gredd, Asst. U.S. Atty., Otto G. Obermaier, U.S. Atty., for S.D.N.Y.), for appellee.

Barry E. Schulman, Brooklyn, N.Y. (Schulman & Laifer, Michael A. O'Connor, Doreen T. O'Connor, of counsel), for defendant-appellant.

Before PRATT and MINER, Circuit Judges, and MIRIAM GOLDMAN CEDARBAUM, District Judge for the Southern District of New York (sitting by designation).

GEORGE C. PRATT, Circuit Judge:

Rigoberto Matos appeals from a judgment entered against him by the United States District Court for the Southern District of New York, Louis L. Stanton, *Judge,* after a jury convicted him of multiple crimes relating to his involvement with narcotics trafficking in the Bronx, New York. Because Matos's claim of ineffective assistance of counsel is raised for the first time on appeal, we remand to the district court to consider that claim in the first instance. The rest of Matos's contentions lack merit.

## BACKGROUND

On April 11, 1989, law enforcement officers executed a warrant to search 789 Elsmere Place for cocaine and other evidence of narcotics offenses. Upon entering the two-story house, the agents discovered two apartments, one on each floor. They broke down the door to the first floor apartment and found Matos and his child inside, but no weapons or drugs. However, a search of the connected garage, accessible only through Matos's apartment because its exterior door was wired shut, disclosed 30 kilograms of cocaine in the back seat of a Jeep. Matos claimed that he rented the parking space to the Jeep's owner, but could not recall the owner's name, address, or phone number. Matos stated that he had suspected the tenants were involved with drugs because of the number of people going up and down the stairs at all hours.

Matos owned the house and rented the upstairs apartment to two tenants. After forcing open the door to the upstairs apartment, agents found there cocaine, various firearms, more than $6,000 in cash, a triple-beam scale, and a notebook containing drug records.

Matos was charged with conspiring to possess with intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. § 846; with possession with intent to distribute more than five kilograms of cocaine in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(A); with managing, controlling, and making his house available for use as a place for the purpose of unlawfully storing, distributing, and using cocaine in violation of 21 U.S.C. §§ 812, 856; and with using his house to facilitate the commission of those crimes in violation of 21 U.S.C. § 853. He was convicted by a jury on all four charges and sentenced to 13 years' imprisonment to be followed by five

years of supervised release. In addition, mandatory special assessments were imposed and Matos's house was seized.

Matos now appeals.

## DISCUSSION

Matos claims that his conviction should be reversed on the grounds of ineffective assistance of counsel; improper admission of the drug records and expert testimony; an erroneous conscious avoidance charge to the jury; and improper summation by the prosecutor.

At the outset, we note that none of Matos's claims is properly before this court. A claim of ineffective assistance should initially be brought to the trial court for determination. *United States v. Aulet*, 618 F.2d 182, 185 (2d Cir.1980). The other matters were not objected to at trial and therefore were waived. *See United States v. Fuentes*, 563 F.2d 527, 531 (2d Cir.), *cert. denied*, 434 U.S. 959, 98 S.Ct. 491, 54 L.Ed.2d 320 (1977). However, in light of the serious nature of Matos's ineffective assistance claim, in the interest of justice we review the objections he now raises.

### A. *Ineffective Assistance.*

In order to prove ineffective assistance of trial counsel, Matos must show both that counsel's representation was unreasonable under the "prevailing professional norms", *Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674, (1984), and that, but for counsel's incompetence, there is a reasonable probability that "the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068. Generally, a claim for ineffective assistance must be made in the first instance to the district court in order that there be a full factual record on review. *United States v. Cruz*, 785 F.2d 399, 404 (2d Cir.1986); *Aulet*, 618 F.2d at 186. However, this court may decide such a claim, even when it is raised for the first time on appeal, when its resolution is "beyond any doubt" or to do so would be in the interest of justice. *Aulet*, 618 F.2d at 186.

Matos's chief grounds for his claim of ineffective assistance are trial counsel's failures to file motions to suppress the evidence seized pursuant to an allegedly illegal search warrant and to suppress Matos's post-arrest statements allegedly obtained unlawfully. In order to show ineffective assistance for the failure to make a suppression motion, the underlying motion must be shown to be meritorious, and there must be a reasonable probability that the verdict would have been different if the evidence had been suppressed. *Kimmelman v. Morrison*, 477 U.S. 365, 375–76, 106 S.Ct. 2574, 2583, 91 L.Ed.2d 305 (1986).

### 1. The Search.

Matos argues that trial counsel should have moved to suppress, as fruits of an illegal search, the 30 kilos of cocaine seized from the Jeep and a phone call to Matos's apartment in which the caller asked if "that thing" was ready yet. He claims that the warrant supporting the search of his apartment was impermissibly broad in that it amounted to an authorization to conduct an illegal general search of the entire premises. *See Maryland v. Garrison*, 480 U.S. 79, 84, 107 S.Ct. 1013, 1017, 94 L.Ed.2d 72 (1987); *see also Stanford v. Texas*, 379 U.S. 476, 481–82, 85 S.Ct. 506, 509–10, 13 L.Ed.2d 431 (1976). Matos claims the confidential informant who supplied information for the search warrant relating to Matos's upstairs tenants, knew that the house was actually a two-family home; that the informant did not know which of the two apartments the tenants occupied in the building; and that the police either had reason to believe there were two apartments and failed to investigate, *see Garrison*, 480 U.S. at 86–87, 107 S.Ct. at 1018–19, or knew there were two apartments and failed to disclose that information to the magistrate, for fear they would have insufficient information to obtain a warrant. As a result, he contends, they obtained a warrant to search "the premises" and impermissibly used it to search both apartments.

The government argues that the fact that there were two apartments in the house was not readily apparent from the

outside; that there was no reason for the agents to believe the house contained two apartments; and that the warrant was therefore valid. *See id.* at 85–86, 107 S.Ct. at 1017–18. Further, they argue that since the entire house was characterized in the warrant as a "stash house", the whole building was suspect and that, upon finding two separate apartments when they entered, the agents acted reasonably in continuing their search, rather than jeopardizing the entire raid by leaving the house to obtain a new warrant restricted to the upstairs apartment. *United States v. Santore*, 290 F.2d 51, 67 (2d Cir.1959), *cert. denied*, 365 U.S. 834, 81 S.Ct. 745, 5 L.Ed.2d 743 (1961).

Based on the record before us, we cannot say whether the police knew, or should have known, or should have made a reasonable investigation about the separate apartments in the house prior to obtaining the warrant. However, Matos's claim that a competent attorney would have challenged the search is a plausible one. Further, if that challenge had succeeded, then evidence of the 30 kilos of cocaine and the phone call would have been suppressed, and it is entirely likely that, without such evidence, a jury would have found there was a reasonable doubt as to Matos's guilt for conspiracy and possession of cocaine.

2. The Statements.

Matos also argues that counsel should have moved to suppress statements he made admitting that he rented the garage to the Jeep's owner, that he did not know who the owner was, and that he suspected the upstairs tenants of being involved with drugs. He claims that the statements were unlawfully obtained because agents had placed him in custody without probable cause; because they did not give him *Miranda* warnings prior to questioning; and because they continued to question him after he shook his head, indicating that he did not want to answer questions.

The government asserts, implausibly, that Matos was merely "detained" during the search and was not "arrested" until after the 30 kilos had been found; that he was properly given *Miranda* warnings prior to questioning; that he never refused to answer questions, but merely "shook his head in disgust"; and that, in any case, there was no evidence that Matos's statements were involuntarily or unknowingly made.

The record at trial shows that immediately upon their forced entry into his apartment, the agents detained Matos; however the agents themselves were unclear whether they "arrested" him at that time. It seems inconceivable that they would have permitted him to leave, even before they found the 30 kilos. Moreover, there was contradictory testimony by the agents as to when he was given his *Miranda* rights and also as to whether he waived them. One agent reversed his testimony on cross-examination and stated that he had given Matos his *Miranda* rights after the arrest and after questioning had begun. However, a second agent testified that he had given Matos *Miranda* warnings before Matos talked to anyone, that Matos "shook his head in disgust", but answered questions.

There is not sufficient evidence in this record to determine at this point whether the statements were obtained legally. In the event that counsel had moved successfully to challenge the arrest and the admission of the statements, Matos might not have been convicted. Certainly, if both motions had been successfully made, the government would have had no admissible evidence, other than the fact of Matos's ownership of the house, to link Matos to the tenants and to the drugs.

3. Other Concerns.

■ Moreover, although failure to make a suppression motion is not *per se* ineffective representation, *Kimmelman*, 477 U.S. at 384, 106 S.Ct. at 2587, where trial counsel fails to make a motion to suppress because he neglected "to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary", then ineffective representation is shown. *Id.* at 385, 106 S.Ct. at 2588; *Strickland*, 466 U.S. at 691, 104 S.Ct. at 2066.

In this case, prior to receiving discovery from the government, Matos's attorney told the trial court that he expected not to make any pre-trial motions because he "assumed" that the government would send him whatever was required. Similarly, at trial, counsel told the court that he had not made a motion to suppress Matos's statement because he had "assumed" Matos had properly been given his rights. Counsel's failure to make any motions seems to have been based not on his own reasonable investigation, but on his reliance on the government's good faith. Counsel's apparent willingness to accept the government's version of the facts at least calls into question the adequacy of his representation. *See Kimmelman*, 477 U.S. at 385, 106 S.Ct. at 2588; *see also Strickland*, 466 U.S. at 688, 104 S.Ct. at 2064. When this is combined with the equally disturbing fact that he failed to preserve for appeal any of the claims made here by Matos, it may well be that counsel's representation was constitutionally ineffective.

However, the record at this point is insufficient for us to determine that, "beyond any doubt", counsel was ineffective. Matos's attorney has not been given an opportunity to show that his conduct was reasonable; and the government has not had a chance to prove the validity of the search and the arrest. Under these circumstances, we think that Matos is entitled to an opportunity to show that his trial counsel was ineffective and that absent such ineffective representation, there is a reasonable probability that the result of his trial would have been different. Therefore, in the interest of justice, we retain jurisdiction of this case and remand to the district court for an evidentiary hearing to develop a factual record on the issue of ineffective assistance.

B. *Matos's Other Claims.*

Matos's other claims, when viewed in light of the record now before us, lack any merit. First, drug records of a coconspirator are admissible where, as here, the trial judge found "a likelihood of an illicit association" between the coconspirator and the defendant. *United States*

*v. Cicale*, 691 F.2d 95, 103 (2d Cir.1982), *cert. denied*, 460 U.S. 1082, 103 S.Ct. 1771, 76 L.Ed.2d 344 (1983). In this case, 30 kilograms of cocaine were found in plain view in a Jeep accessible only through Matos's apartment; Matos had keys to the Jeep, knew how to turn off its alarm, but did not give any information about its alleged owner; the drug records were found in the second floor apartment; and the author of the records was a tenant in the apartment. These facts sufficiently connect Matos to the drugs and to the author of the drug records, and they provide reasonable grounds for the trial court to find that there was a likelihood of Matos's participation in the conspiracy and to admit the records. *Bourjaily v. United States*, 483 U.S. 171, 181, 107 S.Ct. 2775, 2782, 97 L.Ed.2d 144 (1987); *United States v. Geaney*, 417 F.2d 1116, 1120 (2d Cir.1969), *cert. denied*, 397 U.S. 1028, 90 S.Ct. 1276, 25 L.Ed.2d 539 (1970).

Second, the admission of the agent's testimony that the records indicated that payments were made to a supplier named "Rigo" was not "manifestly erroneous". *United States v. Mang Sun Wong*, 884 F.2d 1537, 1543 (2d Cir.1989), *cert. denied*, — U.S. —, 110 S.Ct. 1140, 107 L.Ed.2d 1045 (1990). It is not improper to elicit expert testimony from an officer who is a fact witness, even if he was not formally qualified as an expert at trial. *United States v. Young*, 745 F.2d 733, 760 (2d Cir.1984), *cert. denied*, 470 U.S. 1084, 105 S.Ct. 1842, 85 L.Ed.2d 142 (1985). Further, where, as here, the agent merely explained his interpretation of the records, such testimony is admissible. *United States v. Diaz*, 878 F.2d 608, 616–18 (2d Cir.), *cert. denied*, — U.S. —, 110 S.Ct. 543, 107 L.Ed.2d 540 (1989).

Third, a conscious avoidance charge is properly given when the defendant claims lack of knowledge but the surrounding circumstances imply that a reasonable person could conclude he should have known. *Mang Sun Wong*, 884 F.2d at 1541. Here, Matos claimed he did not know drugs were stored on his property, yet there was substantial foot traffic through the hallway with people carrying

packages out; during the search a phone call came in to Matos and the caller inquired about the availability of some "thing"; and 30 kilograms of cocaine were found in plain view in a Jeep next to Matos's laundry facilities in a garage accessible only from his apartment. This was a sufficient foundation to justify a conscious avoidance charge. Further, the language Matos objected to in the charge itself is the language specifically authorized by this court for a conscious avoidance charge. *United States v. Bright*, 517 F.2d 584, 587 (2d Cir.1975).

Finally, Matos's claims of improper summation by the prosecutor point only to abbreviated, but correct, statements of the law; comments about defense claims being unsupported by the evidence; and arguments about inferences available from the evidence. Considered separately or together they do not amount to "flagrant abuse" and thus are not grounds for reversal. *United States v. Perry*, 643 F.2d 38, 51 (2d Cir.), *cert. denied*, 454 U.S. 835, 102 S.Ct. 138, 70 L.Ed.2d 115 (1981).

## CONCLUSION

We retain jurisdiction of the case, remand it for a hearing on Matos's claim of ineffective assistance of trial counsel, and otherwise affirm.