101 F.3d 684
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
UNITED STATES of America, Appellee,
v.
Alejandro MARTINEZ, also known as Alejandro Martinez-Garcia;
Jose De Jesus Zapata-Herrera, also known as El Chino, also
known as Jose Mario Perez; Johnny Aybar; Jose Miguel
Rodriguez; Michael R. Williams; Margarita Hernandez;
Francisco Bolivar and Holguer Miguel Garay, also known as
Luis Alica Reina, Defendants,
Nelson Aybar and Felix Hernandez, Defendants-Appellants.
 Nos. 95-1611, 95-1619.
 United States Court of Appeals, Second Circuit.
 May 21, 1996.
 
 APPEARING FOR APPELLANT AYBAR: Justin Levine, New York, NY.
 APPEARING FOR APPELLANT HERNANDEZ: Raymond S. Sussman, White Plains, NY. APPEARING FOR APPELLEE: Michael A. Rogoff, Assistant United States Attorney for the Southern District of New York, New York, NY.
 S.D.N.Y.
 AFFIRMED.
 Before MESKILL, and CARDAMONE, and J. MINER, Circuit Judges.
 
 
 1
 This cause came on to be heard on the transcript of record and was argued by counsel for appellant Aybar and for the government, and was submitted by counsel for Hernandez.
 
 
 2
 Defendants-appellants Nelson Aybar and Felix Hernandez appeal from judgments entered in the United States District Court for the Southern District of New York (Griesa, J.) convicting Aybar and Hernandez, following a jury trial, on one count of conspiracy to distribute and to possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(A), and 846. The district court sentenced Aybar principally to a 235-month term of imprisonment and Hernandez principally to a 121-month term of imprisonment.
 
 
 3
 According to the government, from September of 1991 until their arrest on August 14, 1992, Aybar and Hernandez participated in a cocaine-trafficking organization that distributed numerous kilograms of cocaine. Defendant Jose de Jesus Zapata-Herrera was the head of the organization and resided in Colombia, South America. Defendant Alejandro Martinez was Zapata-Herrera's main broker for the cocaine in New York. The government claimed that, from Colombia, Zapata-Herrera would arrange for multi-kilogram shipments of cocaine to be delivered in New York to Martinez, who in turn would distribute the cocaine among Aybar, Hernandez, and others.
 
 
 4
 The government's proof at trial included: the testimony of four former members of the organization, Marino Rodriguez, Bolivar Francisco, Jose Rodriguez, and Michael Williams; over twenty recorded conversations obtained from wiretaps placed on Martinez' home and cellular telephones; drug records seized from Martinez' home, reflecting how various shipments of cocaine were distributed among Aybar, Hernandez, and others; and cocaine, money, narcotics paraphernalia, beepers, cellular telephones, address books, photographs, and documents seized from the homes of various members of the conspiracy.
 
 
 5
 On November 12, 1993, a jury found Aybar and Hernandez guilty. Following their convictions, both Aybar and Hernandez moved, pursuant to Fed.R.Crim.P. 33, to set aside the verdict, claiming that they had received ineffective assistance of trial counsel. At sentencing, on October 19, 1995, the district court denied Aybar and Hernandez' motions as untimely and meritless.
 
 
 6
 On appeal, Aybar and Hernandez again argue that their trial attorneys were constitutionally ineffective. In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court held that, in order for a defendant to prevail on an ineffective assistance of counsel claim, the defendant must show: (1) that his attorney's performance "fell below an objective standard of reasonableness," id. at 688; and (2) that there was a "reasonable probability" that, but for his attorney's error, the outcome of the trial would have been different, id. at 694. We think that the claims of Aybar and Hernandez are without merit because the appellants cannot show that their attorneys' performances "fell below an objective standard of reasonableness."
 
 
 7
 Aybar argues, inter alia, that he received ineffective assistance because his attorney failed to file a motion to suppress certain incriminating wiretap evidence. In order for Aybar to be successful on this claim, he must show that the suppression motion would have been meritorious if filed. See United States v. Matos, 905 F.2d 30, 32 (2d Cir.1990). Aybar argues that a suppression motion would have been successful because the government violated 18 U.S.C. § 2518, which requires that wiretap recordings be sealed, by allowing Marino Rodriguez to listen to the tapes during the course of the government's investigation.
 
 
 8
 However, 18 U.S.C. § 2517(2) authorizes a law enforcement officer to use "the contents of any wire, oral, or electronic communication or evidence derived therefrom ... to the extent such use is appropriate to the proper performance of his official duties." We have held that the disclosure of intercepted conversations to a witness for the purpose of making voice identification is an appropriate use of intercepted wiretap communications. See United States v. Ricco, 566 F.2d 433, 435 (2d Cir.1977), cert. denied, 436 U.S. 926 (1978). Accordingly, because the wiretap evidence was properly used by the government, any motion made to suppress the wiretap evidence would have failed. For this reason, we do not think that the conduct of Aybar's attorney fell below an "objective standard of reasonableness."
 
 
 9
 Hernandez claims, inter alia, that he received ineffective assistance because his attorney failed to introduce documents that allegedly would have shown that Hernandez' recorded conversations with Martinez related to cars and not drugs, as the government contended at trial. However, the government at trial conceded that Hernandez and Martinez were involved in a car business together and that many of their tape-recorded conversations related to various cars that they were buying and selling. Thus, the introduction of further evidence that Hernandez was involved in a car business with Martinez would not have proven anything that had not been conceded already by the government. Accordingly, we do not think that the conduct of Hernandez' attorney fell below an "objective standard of reasonableness."
 
 
 10
 Both Aybar and Hernandez claim that the district court erred by improperly attributing to them quantities of cocaine for the purpose of determining relevant conduct for sentencing. To determine a defendant's relevant conduct for purposes of sentencing, a defendant will be held responsible not only for his own conduct but also for "reasonably foreseeable acts undertaken in furtherance of any jointly undertaken activity." United States v. Joyner, 924 F.2d 454, 458 (2d Cir.1991). The sentencing court need not find that the defendant "had actual knowledge of the exact quantity of narcotics involved in the conspiracy; it is sufficient if he could reasonably have foreseen the quantity involved." United States v. Negron, 967 F.2d 68, 72 (2d Cir.1992).
 
 
 11
 Aybar claims that, at sentencing, he improperly was held accountable for the conspiracy to import and distribute 250 kilograms of cocaine. However, we think that the district court properly relied on the government's wiretap evidence and Martinez' drug records in determining that a scheme to import and distribute 250 kilograms of cocaine existed, and that Aybar was a co-conspirator in the scheme. Thus, it was appropriate for the district court to sentence Aybar for the amount of drugs involved in this scheme.
 
 
 12
 Hernandez claims that the district court improperly held him accountable for over five kilograms of cocaine when determining his sentence. While Hernandez concedes that the government presented sufficient proof that he was accountable for four and one-half kilograms of cocaine, he claims that the one and one-half kilograms of cocaine seized from a co-conspirator's apartment were not "reasonably foreseeable" to him. We disagree. The government's wiretap evidence not only demonstrates that the cocaine discovered in the co-conspirator's apartment was foreseeable to Hernandez, but that Hernandez actually knew that the cocaine was there. Accordingly, the district court properly held Hernandez accountable for over five kilograms of cocaine.
 
 
 13
 We have considered Aybar and Hernandez' remaining contentions, and we find them all to be without merit.