**UNITED STATES of America,**
**Appellee,**

v.

**Ricaurte SALDARRIAGA,**
**Defendant–Appellant.**

**Docket No. 99–1270**

United States Court of Appeals,
Second Circuit.

Argued Feb. 4, 2000.

Decided Feb. 16, 2000.

Robert E. Nicholson, Brooklyn, NY, for Defendant–Appellant.

Timothy J. Treanor, Assistant United States Attorney for the Southern District of New York (Mary Jo White, United States Attorney, Christine H. Chung, Assistant United States Attorney, of counsel) New York, NY, for Appellee.

Before: CABRANES, OAKES, and SACK, Circuit Judges.

PER CURIAM:

Following a four-day jury trial in the United States District Court for the Southern District of New York (Whitman Knapp, *Judge*), defendant-appellant Ricaurte Saldarriaga was convicted on one count of possession of crack cocaine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and one count of possession of cocaine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C). On appeal, defendant claims, *inter alia*, that the District Court erred in its charge to the jury concerning the inference the jury could draw from the government's failure to utilize certain investigative techniques. We conclude that the Court properly instructed the jury and therefore affirm.

## I.

On November 24, 1997, defendant accompanied co-defendant Ruben Bautista to a meeting at the corner of 131st Street and 12th Avenue on the West Side of Manhattan at which Bautista, in defendant's presence, sold crack cocaine and cocaine to a third man. The meeting was, in the parlance of law enforcement, a setup; the purchaser was an undercover police officer working in conjunction with a Drug Enforcement Agency task force (the "task force"), and defendant and Bautista were arrested soon after Bautista handed over the drugs to the officer. The task force did not "wire" the undercover officer for an audio recording of the meeting, did not photograph or videotape the meeting, and following the meeting did not test for fingerprints the bags that contained the cocaine.

On December 10, 1997, a grand jury returned a three-count indictment charging defendant and Bautista with: (1) conspiracy to distribute crack cocaine and cocaine; (2) possession of crack cocaine with intent to distribute; and (3) possession of cocaine with intent to distribute. Bautista pled guilty prior to trial, and defendant's trial began on July 7, 1998. At trial, defense counsel attacked the task force for failing to utilize certain investigative techniques, including those noted above, and in so doing occasionally attracted the judge's disapproval. At the conclusion of trial, the jury was charged as follows:

And then we heard a lot about the government's techniques. You remember I kept telling defense counsel that was irrelevant, and he kept on talking about techniques nonetheless.

Now, I kind of chastised him, and the fact that I chastised him, again, had nothing to do with anything. That just shows I never was a very patient person and old age hasn't improved me on that. It is nothing to hold against him that he insisted on making the arguments even though I told him they were irrelevant.

But now I will tell you why they are irrelevant. The law is clear that the government has no obligation to use any particular techniques. The government's techniques [are] not on trial here. The government has no obligation to use all the possible techniques that are available to it. The government's function is to give enough evidence to satisfy you beyond a reasonable doubt that the charges are true, and the fact that there are a thousand[ ] other things they could have done is wholly irrelevant.

However, if suggesting things that they could have done leads you to think, well, maybe I have a reasonable doubt because I didn't have any evidence on that subject, if that happens, why, then, of course, that is a reasonable doubt like anything else.

Let me give you as an example. One thing I remember in defendant's summation was that there was no picture of the defendant with these drugs, this package in his hand, and defendant spent a lot of argument showing how simple it would be with all the resources the government had to produce such a picture. And the government on the other hand was very indignant and showed how it would be impossible to produce such a picture.

They were both wasting their breath on that issue, because if evidence is such that without the picture you would have a reasonable doubt as to whether the government established the defen-

dant[']s identity as the person who did these things, then you have a reasonable doubt and it doesn't make any difference whether the government could have or could not have. Maybe the government could establish beyond peradventure that it would be impossible to have that picture, it doesn't make any difference. If you have a reasonable doubt because you didn't get the picture, then you [have] a reasonable doubt.

It is wholly immaterial whether the government could have done it or couldn't have done it or how many people the government had available that would do it. And so I think I made that clear.

On July 14, 1998, a day after being charged, the jury returned a guilty verdict on counts two and three, possession with intent to distribute crack cocaine and cocaine. The Court did not submit the conspiracy charge for the jury's consideration. Prior to sentencing, defendant moved for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure. On May 14, 1999, the Court denied the motion and sentenced defendant to, *inter alia,* 120 months' imprisonment. This timely appeal followed.

## II.

 Taking the charge as a whole, as we must, *see, e.g., United States v. Clemente,* 22 F.3d 477, 483 (2d Cir.1994), it is apparent that defendant cannot succeed on his claim that the jury was charged incorrectly. The Court's disputed jury instruction concerning the government's failure to use certain investigative techniques, set forth in full above, may have been somewhat chatty, but it was, in substance, legally sound. The Court properly charged the jury to base its decision on the evidence or lack of evidence that had been presented at trial, and to focus solely on whether, in light of that evidence or lack of evidence, the jury was convinced beyond a reasonable doubt that the defendant was guilty of the crimes with which he was charged.

The jury correctly was instructed that the government has no duty to employ in the course of a single investigation all of the many weapons at its disposal, and that the failure to utilize some particular technique or techniques does not tend to show that a defendant is not guilty of the crime with which he has been charged. *See United States v. Sanchez Solis,* 882 F.2d 693, 697 (2d Cir.1989); *United States v. Cheung Kin Ping,* 555 F.2d 1069, 1073–74 (2d Cir. 1977); 1 LEONARD B. SAND ET AL., MODERN FEDERAL JURY INSTRUCTIONS, Instr. 4–4, ¶ 4.01 (1999 ed.), at 4–24 to 4–25. As the jury was instructed properly on this point, defendant's challenge to the District Court's jury charge is unavailing.

We have considered defendant's other claims on appeal and have concluded that they are without merit.

### III.

For the reasons stated above, the judgment of the District Court is hereby affirmed.